No. 65,657

DANIEL H. GLYNOS, *et al., Appellees/Cross-Appellants,* v. STEVEN D. JAGODA, *et al., Appellants/Cross-Appellees.*

(819 P.2d 1202)

Opinion filed October 25, 1991.

*Paul Hasty, Jr.,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *Robert A. Mintz,* of the same firm, was with him on the briefs for appellants/cross-appellees.

*Mark A. Buchanan*, of Popham, Conway, Sweeny, Fremont & Bundschu, P.C., of Kansas City, Missouri, argued the cause, and *Bert S. Braud*, of the same firm, was with him on the briefs for appellees/cross-appellants.

The opinion of the court was delivered by

SIX, J.: This is a personal injury case arising from a blend of theories—premises liability and ordinary negligence.

The issues relate to: (1) the numerical composition of civil juries under K.S.A. 1990 Supp. 60-248(a) and (g); (2) the propriety, in closing argument, of reaching beyond the record to invoke the word image of "the Hyatt Regency collapse"; (3) building codes; (4) punitive damages; and (5) prior accident evidence.

We reverse on the jury composition issue, address the remaining issues, and remand for a new trial.

Daniel H. Glynos, a minor, and Nicholas Glynos, his father, sued Steven D. Jagoda and David B. Feingold, partners of M-H Company, and Nathan G. Jagoda, Frank Morgan, and I.I. Ozar, as partners of NFI Management Company, for damages sustained by Daniel at an apartment complex in Overland Park, Kansas. The jury returned a verdict for $61,722.25, assessing 10% fault to Daniel and 90% fault to the five defendant apartment owners and managers (Meadowlark Hill). The trial court entered judgment on the jury verdict in the amount of $55,595.03 plus costs. Meadowlark Hill appeals. Plaintiffs cross-appeal the trial court's (1) failure to submit the issue of punitive damages to the jury and (2) exclusion of evidence of a prior plate glass accident at another apartment complex owned and managed by Meadowlark Hill.

Jurisdiction is under a K.S.A. 20-3018(c), upon our motion for transfer to this court from the Court of Appeals.

## Facts

Daniel, age 15, was injured when he collided with a sliding glass door separating the apartment complex's indoor and outdoor swimming pools. He was visiting his mother, who lived at the complex.

Daniel testified that he climbed out of the indoor pool, pushed water out of his eyes, and walked into the sliding glass door. He looked and thought the door was open. His eyesight was blurred because of the chlorine from the pool water. There was a sun

glare on the water of the outside pool. The accident occurred at approximately 7:30 p.m. on August 15, 1985. Daniel suffered multiple lacerations which required surgery.

The 400-unit complex was constructed in 1968. Daniel collided with an ordinary plate glass door. At the time the complex was constructed, plate glass was sufficient to meet applicable building codes. The building codes had been modified, prior to the time of Daniel's accident, to require safety glass in sliding glass doors. The revised codes do not require replacement with safety glass unless the plate glass is replaced for other reasons, such as repairing broken glass.

Prior to trial, Meadowlark Hill moved for summary judgment on plaintiffs' negligence claim based on the failure to replace the plate glass with safety glass. Meadowlark Hill argued that because it complied with the building codes, it had no duty, as a matter of law, to replace plate glass with safety glass. Plaintiffs argued that compliance with building codes is no defense to common-law negligence where a reasonable landlord would have taken additional precautions to maintain safe premises. The trial court denied the Meadowlark Hill motion.

Plaintiffs presented evidence that another resident of the complex, Steven Hayes, had been injured in a similar accident in 1984 when he walked into a sliding glass pool door, cutting his forehead. Hayes informed the apartment manager. Only the glass door broken by Hayes' impact was replaced with safety glass. After Hayes' accident, Meadowlark Hill did not post signs, stickers, or other warning labels around the indoor pool.

Following the presentation of all the evidence, Meadowlark Hill moved for a directed verdict on plaintiffs' claims for punitive damages and for negligence. The trial court ruled that there had not been a proper threshold showing to justify submitting the issue of punitive damages to the jury. The motion for a directed verdict on the negligence claim was denied.

### Testimony of the Safety Engineer

Plaintiffs presented the expert testimony of Donald Dressler, a safety engineer. A summary of Dressler's testimony reflects that a sliding glass door was defined as a "hazardous location" by the 1984 Building Official Code Administration (BOCA) Building

Code enacted by the City of Overland Park and in effect at the time of the accident. The building code requires safety glass in all new and replaced sliding glass doors. The BOCA code references a national industry standard, American National Safety Institute (ANSI) Standard Z97. Building codes are bare minimum standards. Federal law enacted in 1977 requires safety glass in sliding glass doors. Ordinary plate glass is weaker than safety glass and breaks into long shards and pieces with edges sharper than a surgeon's scalpel. In contrast, safety glass is three to ten times stronger than ordinary plate glass and breaks into little marble sized fragments with which it is almost impossible to cut oneself. Plate glass is the cheapest and weakest of all architectural glass. Plate glass weakens with age and with exposure to chlorine. If the sliding glass door had been constructed of safety glass, it is likely Daniel would not have broken the glass.

Dressler also testified that the sliding glass doors separating the indoor and outdoor pools were a safety hazard because it was difficult to tell if glass was in the doors or whether the doors were open or closed. There were approximately 20 other fixed panels or sliding glass doors around the pool area. Safety decals should have been placed on the fixed panels and glass doors to warn of the presence of glass and to indicate whether the door was open or closed. Something as simple as a piece of tape could work. Safety decals should be used even with safety glass to prevent bumping into the glass.

## Claims of the Parties

The trial court submitted the case to the jury. Instruction No. 13 set forth the parties' claims:

"The plaintiffs, Daniel Glynos and Nicholas Glynos, claim that they sustained injuries and damages due to the fault of the defendants, Nathan Jagoda, Steven Jagoda, I.I. Ozar, David Feingold and Frank Morgan:

"In failing to install safety glass in the sliding glass doors separating the indoor and outdoor swimming pools of the Meadowlark Hill Apartment complex;

"In failing to place warning decals on or near the plate glass doors between the swimming pools to indicate the presence of plate glass;

"In failing to maintain the common area of the indoor pool complex in a safe condition.

"The plaintiff [sic] have the burden to prove that their claims are more probably true than not true.

"The defendants deny that they were at fault. The defendants claim that Daniel Glynos was at fault as follows:

"Failing to keep a proper lookout;

"In failing to open the door and colliding with it.

"The defendants have the burden to prove that their claims of fault on the part of the plaintiff are more probably true that [*sic*] not true."

## The Jury Issue

A 12-person jury was sworn. One juror did not return after the opening statement recess. The trial court informed the parties of the missing juror. They consented to proceed with a jury of 11 persons.

During the post-trial jury instruction conference, Meadowlark Hill objected to jury instruction No. 22, which states in part: "Your agreement upon a verdict may be by ten or more jurors in this case." Meadowlark Hill argued that because the jury consisted of less than 12 jurors, a unanimous verdict was required. The trial court overruled the objection, stating:

"It was the intention of the Court when we had the unfortunate situation of the disappearing juror and the parties agreed to go with eleven that ten of the eleven would control. I recall vividly that I did not specifically state that, as is my custom. In any event, the verdict form has a place for them to recite whether it is by ten or eleven and the objection is overruled."

Meadowlark Hill asserts that K.S.A. 1990 Supp. 60-248 provides that a verdict of a jury of less than 12 jurors must be unanimous unless the parties specifically stipulate to the contrary. Meadowlark Hill contends that it did stipulate to a jury of 11, but did not stipulate to allow a jury verdict of less than all of the jurors.

Plaintiffs argue that Meadowlark Hill impliedly stipulated to a less than unanimous verdict by stipulating to proceed with 11 jurors. Plaintiffs contend that both their counsel and the trial court understood the parties to have agreed that an agreement of 10 jurors would be sufficient to render a verdict. Plaintiffs invite us to adopt the following rule: When a juror leaves during trial, and the parties stipulate to a jury of less than 12 members, a party must immediately advise the court of his/her intention to insist on a unanimous verdict. We decline the invitation.

K.S.A. 1990 Supp. 60-248(a) states:

"*Stipulation as to number.* The parties may stipulate that the jury shall consist of any number less than 12 or, subject to the provisions of subsection (g), that a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury."

K.S.A. 1990 Supp 60-248(g) provides, in part:

"*Verdict; number of jurors required; form; correction.* Whenever the jury consists of 12 members, the agreement of 10 jurors shall be sufficient to render a verdict. In all other cases, subject to the stipulation of the parties as provided in subsection (a), the verdict shall be by agreement of all the jurors."

In *Schultz v. Kansas Gas & Electric Co.,* 7 Kan. App. 2d 500, 644 P.2d 484 (1982), a personal injury case was tried to a jury of 12 persons. The case was submitted to the jury, which deliberated for a short time before separating for the evening. The next morning, one of the jurors called and advised the trial court that she was ill and would be unable to attend. The trial judge stated that because 10 out of 12 could reach a verdict, he was going to allow the remaining 11 to deliberate. The defendant objected, stating that it did not agree to a jury of less than 12 and if it did agree to 11, agreement of all the jurors would be necessary. The trial court overruled the objection. The 11-member jury returned a unanimous verdict. The defendant appealed. The Kansas Court of Appeals discussed K.S.A. 60-248, stating:

"The first sentence of the amendment to subsection (g) indicates that if the parties have not stipulated to decrease the number of jurors, the agreement of ten of *the twelve* will be sufficient for a lawful verdict. If the parties have agreed to a jury of less than twelve but have not agreed to reduce the number necessary for a verdict, as permitted by the last clause of subsection (a), the verdict must be unanimous. The provision that the vote of ten jurors is sufficient for a verdict only applies when the jury includes twelve members. Likewise, unanimity is compelled only when the parties have stipulated to a jury of less than twelve." 7 Kan. App. 2d at 502.

The case was reversed and remanded for a new trial because the defendant had not stipulated to a jury of less than 12.

The language of K.S.A. 1990 Supp. 60-248(a), coupled with the *Schultz* rationale, establishes the requirement of 2 separate stipulations as to a juror number of less than 12 for a civil jury: first, a stipulation to proceed with less than 12 jurors; and second, a stipulation that a verdict of a stated majority of the jurors shall be sufficient. When the parties consent to a jury of less than 12,

the verdict must be unanimous unless the, parties stipulate to accept a verdict of a stated majority of less than all of the jurors.

In the case at bar, the journal entry states: "Thereupon, one juror, Michelle Fischer, did not return to jury service following a recess of the Court. The Court so informed the parties, and each party consented to proceed with a jury of eleven persons." The journal entry makes no mention of a second stipulation that the verdict may be by less than all of the remaining 11 jurors. Furthermore, the trial court stated that it did not specifically state, at the time of the stipulation, that 10 of the 11 jurors would control. The record reflects that Meadowlark Hill did not expressly stipulate to a less than unanimous verdict as required by K.S.A. 1990 Supp. 60-248(g).

Plaintiffs also reason that Meadowlark Hill waived its right to a unanimous verdict by failing to request that the jury be sent out for further deliberations after it returned the 10-juror verdict. They rely on K.S.A. 1990 Supp. 60-248(g).

Meadowlark Hill counters that the trial court instructed, over its objection, that a verdict of 10 or more jurors would be sufficient. Therefore, K.S.A. 1990 Supp. 60-248(g), which provides in part, "If less than the required number of jurors agree, the jury must be sent out again," has no application because, in accordance with the trial court's instruction, the required number of jurors did agree. Meadowlark Hill suggests that it had no choice but to wait for the final verdict and then appeal. We agree. It would have been futile to request the jury be sent out again after returning a verdict by 10 of the 11 jurors. The trial court had already ruled and instructed that a verdict of 10 out of 11 would control.

Finally, plaintiffs argue that Meadowlark Hill waived its right to a unanimous verdict by submitting a verdict form to the trial court which allowed for a less than unanimous verdict. Meadowlark Hill answers this argument by pointing out that the proposed verdict form was submitted prior to trial. Meadowlark Hill had no reason to anticipate the disappearing juror. Further, it asserts that the objection to instruction No. 22 made its position clear.

The Meadowlark Hill proposed instructions were filed in the district court on August 27, 1990. The trial occurred on July 16-18, 1990. The proposed instructions were obviously not filed with

the clerk when submitted to the trial court. The record does not reflect when they were submitted to the trial court. During oral argument, counsel for Meadowlark Hill stated that the requested instructions, including the verdict form, were prepared and submitted to the trial judge prior to trial. Plaintiffs do not state when the Meadowlark Hill proposed verdict form was submitted to the trial court. The Meadowlark Hill objection at the instruction conference was sufficient to prevent waiver of the right to a unanimous verdict.

K.S.A. 1990 Supp. 60-248 is not ambiguous. We hold that the statute requires a second stipulation to agree to a less than unanimous verdict when the jury consists of less than 12 jurors. The verdict, in the case at bar, is invalid.

Although we reverse and remand on the jury composition issue, we choose to address the additional issues, as they may again be presented to the trial court.

### Closing Argument

In closing argument, plaintiffs' counsel stated:

"They spent a lot of time on the building codes. That was an illusion. They tell you that because they met the building code that they were not at fault. They did what the building code required, so why should we find them at fault? But you heard Mr. Dressler tell you that the building code was the bare minimum, that was the least they had to do, and it doesn't make it safe.

*"And while this is not on the same magnitude, I will tell you that the Hyatt Regency met the building code."*

Based on this remark, the following colloquy occurred between counsel and the court:

"[Meadowlark Hill's counsel]: Judge, there is no evidence of that. I ask it be stricken. There is no issue.

"[Plaintiffs' counsel]: I think it is common knowledge it would not have settled up if it had not.

"[Meadowlark Hill's counsel]: Judge, I ask that argument be stricken.

"THE COURT: Overruled."

Meadowlark Hill argues that the Hyatt Regency comment was improper because it was based on facts not in evidence and designed to produce prejudice. We agree.

We observe that Model Rule of Professional Conduct 3.4 (1990 Kan. Ct. R. Annot. 262) provides, in part:

"A lawyer shall not:

. . . .

"(e) in trial, allude to any matter that the. lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence."

"No rule governing oral argument is more fundamental than that requiring counsel to confine their remarks to matters *in evidence*." *State v. Bradford,* 219 Kan. 336, 340, 548 P.2d 812 (1976).

Counsel's argument referring to the Hyatt Regency was improper. The remark referred to extraneous matters not in evidence.

The Hyatt Regency collapse was highly publicized and affected a great number of Kansas City area residents residing in the county where this case was tried. The trial court's overruling of Meadowlark Hill's objection endorsed the impropriety.

## Compliance With Applicable Building Codes

Meadowlark Hill argues that plaintiffs alleged negligence in maintaining a dangerous condition by failing to install safety glass in contravention of federal, state, and city laws. Meadowlark Hill asserts error in the denial of its motion for summary judgment because: (1) The applicable laws were enacted after the complex was constructed; and (2) they contained no provisions for retroactive application. The trial court erred, Meadowlark Hill contends, by permitting Glynos to introduce evidence relating to the post-1968 building codes.

Plaintiffs counter by asserting that Meadowlark Hill mischaracterized their allegation of negligence. They assert that although their first amended petition alleges that Meadowlark Hill had violated federal, state, and local building codes, they did not present this theory at trial. Instead, as the jury instructions indicate, plaintiffs alleged that Meadowlark Hill was negligent by failing to maintain the common swimming pool area in a safe condition. Plaintiffs further assert that the building codes were properly admitted into evidence to show Meadowlark Hill's knowledge and notice of the danger of plate glass doors. Plaintiffs also contend that Meadowlark Hill opened up the subject with

its opening statement by asserting compliance with the building codes.

Plaintiffs' response to Meadowlark Hill's motion for summary judgment asserted that his claim is based on common-law negligence rather than negligence per se, *i.e.*, violation of the building codes. In addition, they contended that compliance with the building codes is not a defense to common-law negligence and that the current building codes were admissible to show Meadowlark Hill's knowledge of the danger of plate glass. We agree.

Instruction No. 13 stated plaintiffs claimed that Daniel's injuries were due to the fault of Meadowlark Hill:

"In failing to install safety glass in the sliding glass doors separating the indoor and outdoor swimming pools of the Meadowlark Hill Apartment complex;

"In failing to place warning decals on or near the plate glass doors between the swimming pools to indicate the presence of plate glass;

"In failing to maintain the common area of the indoor pool complex in a safe condition."

Instruction No. 18 instructed the jury on the law relating to landlord liability for defective premises:

"A landlord is liable for injuries to his tenants and their invitees that result from defects on parts of premises reserved for the common use of his tenants when the landlord knew of the defects, or by the exercise of ordinary care should have known of the defects, and had a reasonable opportunity to repair them before the injuries were sustained."

Although no objection was made to instruction No. 18, we reason its use, in the case at bar, was misplaced. The instruction on defective premises contributed to a blending of premises liability and ordinary negligence theories.

Meadowlark Hill argues that the trial court erred by denying its motion for directed verdict because: (1) As a matter of law, it may not be found negligent; and (2) the sliding glass door complied with all applicable building codes. Meadowlark Hill asserts that Kansas appellate courts have not ruled on code compliance as a defense, but cites *Sparks v. American Mutual Liberty Insurance Co.*, 287 So. 2d 654 (La. App. 1973), and *Bernstein v. Reforzo*, 37 Md. App. 724, 379 A.2d 181 (1977) (compliance with building codes precludes a finding of negligence).

Plaintiffs assert we have ruled that conformity with industry standards, or standards legislatively imposed, does not preclude a finding of negligence, where a reasonable person may have taken additional precautions under the circumstances. *Folks v. Kansas Power & Light Co.*, 243 Kan. 57, 61-62, 755 P.2d 1319 (1988), and *Jones v. Hittle Service, Inc.*, 219 Kan. 627, 631-32, 549 P.2d 1383 (1976). Additionally, plaintiffs cite cases from other jurisdictions which upheld verdicts finding defendants liable for injuries sustained when plaintiffs were injured by contact with plate glass doors or panels. *Jiffy Markets, Inc. v. Vogel*, 340 F.2d 495 (8th Cir. 1965); *Becker v. IRM Corp.*, 38 Cal. 3d 454, 213 Cal. Rptr. 213, 698 P.2d 116 (1985); and *Wheeler v. Jones*, 19 Utah 2d 392, 431 P.2d 985 (1967).

*Folks* and *Jones* control; thus, it is unnecessary to discuss the cases from other jurisdictions cited by the parties. We apply the rationale of *Folks* and *Jones* to building codes.

*Folks* involved a wrongful death and survival action brought by a surviving spouse and minor children. Folks was fatally injured while painting at a construction site when a ladder he was using came in contact with KP&L's power line. Plaintiffs alleged KP&L had negligently designed, maintained, and installed the power lines. KP&L claimed it was not negligent because the power line exceeded the clearance requirements of a five-foot horizontal clearance developed by the Institute of Electrical and Electronic Engineers and published in The National Electric Safety Code (NESC). We held that compliance with industry standards is not an absolute defense to negligence, stating:

"While it may be evidence of due care, compliance with industry standards, or standards legislatively or administratively imposed, does not preclude a finding of negligence where a reasonable person would have taken additional precautions under the circumstances. *Jones v. Hittle Service, Inc.*, 219 Kan. 627, 632, 549 P.2d 1383 (1976) (citing *Garst v. General Motors Corporation*, 207 Kan. 2, 484 P.2d 47 [1971])." 243 Kan. at 61-62.

*Folks* further noted that the clearance standard did not apply to building sites and that the NESC set only a minimum safety standard.

*Jones* involved a legislatively imposed standard. *Jones* was a wrongful death and survival action resulting from a propane gas explosion that killed three persons. Propane is odorless; conse-

quently, an odorizing agent is added to make propane perceptible. The plaintiffs in *Jones* claimed the defendants were negligent in failing to sufficiently odorize the propane. Evidence was introduced regarding the standards for odorization of propane gas developed by the National Fire Protection Association (NFPA). The Kansas state fire marshal, charged by K.S.A. 31-207 (Corrick) with making rules and regulations for the storage, use, manufacture, and sale of petroleum products, adopted the NFPA standard in a regulation. The parties stipulated that the propane gas had been odorized to the level required by the Kansas regulation. Defendants argued that compliance with the regulation conclusively established they were not negligent and the propane gas was not defective. We rejected defendants' argument, relying on Restatement (Second) of Torts § 288C (1963), which provided: " 'Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions.' " 219 Kan. at 631.

In the case at bar, plaintiffs presented Dressler, who testified as an expert regarding current industry safety standards, federal law, and local building codes. Each of these standards classified sliding glass doors as hazardous locations and required safety glass in all new and replacement installations. Dressler testified that the building code with which Meadowlark Hill had complied was a bare minimum standard. Hayes testified that he had walked into a similar sliding glass door next to the indoor pool. From Dressler's testimony, the jury could have concluded that Meadowlark Hill had notice that compliance with the building codes was inadequate and that it should have taken additional precautions in the swimming pool area.

Meadowlark Hill asserts that in negligence cases the existence of a duty is a question of law for the court. *Hackler v. U.S.D. No. 500*, 245 Kan. 295, 777 P.2d 839 (1989); *Durflinger v. Artiles*, 234 Kan. 484, 673 P.2d 86 (1983). According to Meadowlark Hill, the trial court erred by denying its motions for summary judgment and for a directed verdict and by permitting plaintiffs to introduce evidence of building codes enacted after construction. Meadowlark Hill also asserts error in submitting the question of whether

it had a duty to replace the plate glass in the swimming pool doors.

Plaintiffs assert that the trial court properly instructed the jury on the common-law duty of a landlord to maintain common areas in a safe condition. Instruction No. 13 instructed the jury that plaintiffs claimed that failing to install safety glass, or place a safety decal on the sliding glass door, was a breach of this duty. The jury was not instructed that violation of the building codes was negligence per se.

Plaintiffs' position is correct. Instruction No. 17 instructed the jury that a landlord has a duty to exercise ordinary care to keep common areas in a safe condition. The trial court did not instruct the jury that Meadowlark Hill had a duty to replace the plate glass door with safety glass.

Instruction No. 18 was taken from PIK Civ. 2d 12.33. It instructed the jury concerning premises defects. Under the facts of this case, we approve of the use of instruction No. 17 (ordinary care); we disagree with the use of instruction No. 18 (premises defects). The blending of the theories of ordinary care and defective premises, under the facts as developed in this case, may have stimulated the building code evidentiary conflict.

Plaintiffs assert a claim for injuries resulting from Meadowlark Hill's alleged negligence occurring in a common use area of the apartment complex. The duty of ordinary care owing from Meadowlark Hill to Daniel, transcends the building code issue. Conformity with the building code is not an absolute defense to a claim based on ordinary negligence.

While compliance may be evidence of due care, it does not preclude a finding of negligence where a reasonable person would have taken additional precautions under the circumstances.

At the time of construction in 1968, the complex met all applicable building codes. We agree with Meadowlark Hill that it had no legal duty to rebuild in order to comply with each update in the building code. We do not imply such an onerous economic requirement.

The question is, simply, did Meadowlark Hill exercise ordinary care to maintain a common area of the complex in a safe condition?

## The Cross-Appeal—Punitive Damages

Plaintiffs filed a motion to assert a claim for punitive damages under K.S.A. 1990 Supp. 60-3703. In the pretrial order, the trial court addressed the motion as follows:

"Plaintiff has recently filed a motion to allow plaintiffs to assert a claim for punitive damages. The Court orders that the Court will rule at the close of plaintiffs' case whether plaintiffs have made a submissible case of punitive damages. There will be no mention by the parties, counsel, or witnesses to the jury of any claim for punitive damages or any allegation of punitive conduct until such time as the Court has ruled."

The trial court did not rule on plaintiffs' punitive damages motion at the close of their case. Following the presentation of all of the evidence, Meadowlark Hill moved for a directed verdict on the punitive damages claim. Plaintiffs referenced the court's statement in the pretrial order and suggested that the court was in a position to rule on the motion. They asserted that Meadowlark Hill was indifferent to the dangerous condition posed by the plate glass sliding glass door despite adequate notice. They relied on Meadowlark Hill's (1) notice of the Hayes' incident, (2) notice of the building code regarding safety glass, (3) knowledge that plate glass was more dangerous than safety glass, and (4) knowledge that children went back and forth through the doorway. The trial court found that there had not been "a proper threshold or evidentiary underpinning to authorize and justify the submission to the jury of the question of punitive damages."

We view the trial court's ruling as a denial of plaintiffs' motion to assert a claim for punitive damages under K.S.A. 1990 Supp. 60-3703.

K.S.A. 1990 Supp. 60-3703 provides:

"No tort claim for punitive damages shall be included in a petition or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court *may* allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim pursuant to K.S.A. 60-209, and amendments thereto. The court *shall* not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed on or before the date of the pretrial conference held in the matter." (Emphasis added.)

The punitive damages issue, on remand, will be controlled by the posture of the case as it develops for retrial. We note that K.S.A. 1990 Supp. 60-3703 contemplates a ruling on a punitive damage claim motion on the basis of supporting and opposing affidavits to be filed on or before the pretrial conference.

### Evidence of a Prior Plate Glass Accident

Plaintiffs argue that the trial court abused its discretion by excluding evidence that Meadowlark Hill had been sued in a prior lawsuit arising out of a similar accident at another Meadowlark Hill apartment complex. They contend the evidence was relevant to show knowledge of the hazardous condition posed by the plate glass door and as evidence of wanton conduct. Meadowlark Hill does not brief this issue.

The trial court, on remand, may or may not be presented with this exclusion issue. If plaintiffs seek to introduce evidence of a prior similar accident, the foundation and manner of presentation may be altered from the record now before us. The trial court will consider the circumstances then developed and rule at that time.

Reversed and remanded.

ABBOTT, J., not participating.

TERRY L. BULLOCK, District Judge, assigned.