(40 P.3d 315)
No. 84,987

MICHAEL R. DUNN, *Appellee*, v. UNIFIED SCHOOL DISTRICT NO. 367, MIAMI COUNTY, STATE OF KANSAS, *Appellant*, and TERRY RAY BALLOU, JR., *Appellee*, v. UNIFIED SCHOOL DISTRICT NO. 367, OSAWATOMIE, MIAMI COUNTY, KANSAS, *Appellant*.

Opinion filed February 8, 2002.

*Steve R. Fabert*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellant.

*Donald W. Vasos* and *David A. Hoffman*, of Vasos Law Offices, of Shawnee Mission, for appellee Michael R. Dunn.

*Lee H. Tetwiler*, of Law Office of Lee H. Tetwiler, of Paola, for appellee Terry Ray Ballou, Jr.

Before MARQUARDT, P.J., ELLIOTT, J., and PADDOCK, S.J.

ELLIOTT, J.: Following jury trial, defendant Unified School District (U.S.D.) No. 367 appeals the judgment and the district court's denial of its motion for judgment as a matter of law or new trial. We affirm.

The factual background is straightforward and undisputed; the procedural background is somewhat muddled but manageable. On December 15, 1995, plaintiffs Michael R. Dunn and Terry Ray Ballou, Jr., seniors at Osawatomie High School, finished lunch early

and headed back to class. To get back to their classroom, Dunn and Ballou had to pass through double-glass hallway doors that were closed but were normally open and had been open when they went to lunch 20 minutes earlier. The plaintiffs noticed from a distance of 50 feet away the doors were closed but proceeded at a fast pace toward the doors. Both reached for the crossbar to open the door at the same time, but Ballou's hand slipped, striking the glass and breaking it. The glass in the door was plate glass, not safety glass, and as a result broke into knife-like pieces severely injuring both students.

Dunn and Ballou each filed a separate claim of negligence against U.S.D. No. 367 pursuant to the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq*. To summarize, Ballou alleged that U.S.D. No. 367 was negligent in (1) failing to discover the plate glass and replace it with safety glass, (2) failing to warn of the danger the plate glass posed; (3) failure to leave a door with plate glass open for passage and to warn that the door was closed; and (4) failure to supervise the students. Dunn alleged that U.S.D. No. 367 was negligent in (1) failing to use safety glass on an interior door; (2) failing to take reasonable steps to make the school premises safe for anticipated uses by their teenaged students; and (3) failing to remove the plate glass in the face of overwhelming evidence of its propensity to cause enhanced injury when broken.

The plaintiffs' claims were joined for discovery and trial. U.S.D. No. 367's first motion for summary judgment, which argued it was immune pursuant to K.S.A. 75-6104(m) and that the claim was barred by the statute of repose, was denied by the district court. Following further discovery, U.S.D. No. 367 renewed its motion for summary judgment. The district court orally granted the motion in part and denied it in part on the date of trial. Specifically, the district court orally granted the renewed motion with respect to the governmental immunity found in K.S.A. 75-6104(m) and, thus, dismissed any claims of negligence for failure to replace the plate glass but denied the motion with respect to the statute of repose argument.

No journal entry was prepared with respect to the ruling on the renewed motion for summary judgment. Nonetheless, the case was

ultimately tried on plaintiffs' allegations of breaches of duties other than failure to replace the plate glass with safety glass. We will, therefore, assume without deciding that U.S.D. No. 367 cannot be held liable for any design or planning defect that led to the installation of the plate glass.

The trial commenced, but a mistrial was declared during the examination of the plaintiffs' first witness.

The new trial commenced almost a year later. Following the reception of evidence and counsels' arguments, the trial court instructed the jury that the defendant had a duty to warn of the danger of the plate glass, duty to guard against breakage of the plate glass door, duty to inspect the school grounds for dangerous conditions, and a duty to properly supervise students and provide a safe learning environment. The jury found each plaintiff to be 10% at fault and U.S.D. No. 367 to be 90% at fault; it found Ballou's damages to be $123,013.52 and Dunn's damages to be $153,378.06.

U.S.D. No. 367 then moved for a judgment as a matter of law or a new trial, arguing (1) the statute of repose barred plaintiffs' claims; (2) defendant's liability is barred by K.S.A. 75-6104(m); and (3) a private person would not be liable under the facts of this case as required by K.S.A. 75-6103. The motion was denied. U.S.D. No. 367 appeals, bringing several issues. We take them in a slightly different order than presented.

*Does the statute of repose bar plaintiffs' claims?*

U.S.D. No. 367 argues that the statute of repose, K.S.A. 60-513(b), bars the plaintiffs' claims.

It is difficult to determine from its brief exactly from what ruling U.S.D. No. 367 appeals. The district court orally denied its motion for summary judgment based on a statute of repose argument and also denied its motion for judgment as a matter of law and, in the alternative, a new trial based on a statute of repose argument.

Nonetheless, a determination of whether the statute of repose applies is a question of law which we review de novo. See *Davidson v. Denning*, 259 Kan. 659, 667, 914 P.2d 936 (1996).

The statute of repose provides:

"Except as provided in subsection (c), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.*" (Emphasis added.) K.S.A. 60-513(b).

Thus, 10 years from the occurrence of the act giving rise to the cause of action is the absolute limit for filing actions. *Dobson v. Larkin Homes, Inc.,* 251 Kan. 50, 52-53, 832 P.2d 345 (1992).

U.S.D. No. 367 argues the act giving rise to the cause of action was the installation of the plate glass in the door which occurred in the late 1960s. This argument must be seen as contra to the argument U.S.D. No. 367 has urged throughout this case. U.S.D. No. 367 has consistently and forcefully argued during the entire pendency of this case that there can be no cause of action based on the planning and design of the building which led to the installation of the plate glass door. The district court agreed with this argument in orally granting U.S.D. No. 367 partial summary judgment, and we have assumed that proposition of law without deciding that such is the case. U.S.D. No. 367's actions in the late 1960s, designing and planning a door with plate glass, is not an act that can give rise to a cause of action because that act is not actionable pursuant to K.S.A. 75-6104(m). Thus, the date of the planning and designing of the plate glass doors is immaterial to a statute of repose argument.

Appellant's reliance on *Klose v. Wood Valley Racquet Club, Inc.,* 267 Kan. 164, 975 P.2d 1218 (1999), is misplaced. In *Klose,* the last act giving rise to plaintiff's cause of action occurred over 10 years after the statute of repose barred the action. In the present case, any tortious act or failure to act which gave rise to plaintiffs' cause of action occurred well within the statute of repose. We will discuss below whether there were, in fact, any tortious acts or a failure to act that supports plaintiffs' cause of action.

U.S.D. No. 367 argues "[t]he statute of repose cannot be avoided by alleging a continuing failure to protect against an ancient premises hazard. The *Klose* appeal involved just such a contention, which was clearly rejected in the final paragraph of the Supreme Court's opinion."

A review of the *Klose* opinion and the appellant's brief filed in that case rejects U.S.D. No. 367's argument. The Supreme Court first held the statute of repose barred a claim against one of the defendants, Wood Valley Racquet Club. 267 Kan. at 168. The court then moved on to discuss plaintiff's claims against the other two defendants, holding those defendants owed plaintiff no duty of care. 267 Kan. at 169-74. The Supreme Court then noted in the last paragraph of the opinion that "Klose makes two final contentions. . . . The second is that Wood Valley had a duty to protect [plaintiff]. Neither is material in light of our conclusions that plaintiff's action against Wood Valley is barred by the statute of repose." 267 Kan. at 174.

*Klose* does not support the defendant's argument that the statute of repose cannot be avoided by alleging a continuing failure to protect against an ancient premises hazard. We can deduce from the fact that Klose's argument that Wood Valley owed him a duty of care was discussed well after the opinion's discussion of the statute of repose that Klose's argument had nothing to do with the statute of repose. In other words, it appears from the opinion that Klose did not argue Wood Valley breached a duty of care to protect him within the time period specified in the statute of repose, thus barring application of the statute of repose. Klose's argument with respect to Wood Valley's alleged duty of care had nothing to do with the applicability of the statute of repose. In the present case, both the district court and this court have been provided with Klose's brief on appeal, and it is clear that Klose's argument regarding Wood Valley's alleged breach of a duty to protect him had nothing to do with the application of the statute of repose. Klose simply argued Wood Valley owed him a duty of care—the argument was not keyed to the statute of repose issue.

The district court did not err in any of its rulings regarding the statute of repose.

### *Does the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 et seq., bar plaintiffs' claims?*

U.S.D. No. 367 makes two arguments that the KTCA bars any liability. First, U.S.D. No. 367 argues that (1) a private person would not be liable under the facts of this case, and (2) the KTCA bars all liability even for those torts independent of the "plan or design" exception found in K.S.A. 75-6104(m). We take each argument in turn.

### *Would a private person be liable for this accident?*

U.S.D. No. 367 argues the trial court erred in overruling its motion for a judgment as a matter of law or a new trial because a private person would not be liable under the facts of this case.

The KTCA governs tort claims brought against school districts. *Jackson v. U.S.D. 259*, 268 Kan. 319, 322-23, 995 P.2d 844 (2000). The KTCA states that unless a statutory exception to liability applies, a governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state. K.S.A. 75-6103(a); *P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, Syl. ¶ 1, 877 P.2d 430 (1994).

Actionable negligence must be based on a breach of duty. The existence of a duty is a question of law for this court. *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983).

*Glynos v. Jogoda*, 249 Kan. 473, 819 P.2d 1202 (1991), controls. In *Glynos*, plaintiff was injured when he went through a plate glass door at a private apartment complex. At the time the complex was built, the plate glass was sufficient to meet applicable building codes. Defendant appealed the judgment entered against it, arguing *inter alia* the trial court erred in denying its motion for a directed verdict because, as a matter of law, it could not be found negligent because the plate glass door complied with all applicable building codes. The Supreme Court held:

"Plaintiffs assert a claim for injuries resulting from Meadowlark Hill's alleged negligence occurring in a common use area of the apartment complex. The duty of ordinary care owing from Meadowlark Hill to Daniel, transcends the building code issue. Conformity with the building code is not an absolute defense to a claim based on ordinary negligence.

"While compliance may be evidence of due care, it does not preclude a finding of negligence where a reasonable person would have taken additional precautions under the circumstances.

"At the time of construction in 1968, the complex met all applicable building codes. We agree with Meadowlark Hill that it had no legal duty to rebuild in order to comply with each update in the building code. We do not imply such an onerous economic requirement.

"The question is, simply, did Meadowlark Hill exercise ordinary care to maintain a common area of the complex in a safe condition?" *Glynos*, 249 Kan. at 485.

## Here, U.S.D. No. 367 words its argument as follows:

"Judge Hill was aware of the *Glynos* case but failed to heed its holding. He concluded that premises liability instructions were proper and that liability could be imposed for failing to replace the plate glass which was installed in conformity with the building codes applicable at the time the school was built. His instructions were clearly erroneous and bluntly violated the remand directions in *Glynos*."

The record clearly refutes this argument. Contrary to U.S.D. No. 367's argument, the jury was not instructed to find fault based on a premises liability theory with respect to the installation of the plate glass or on a theory the school should have replaced the plate glass. *Glynos* holds a private person may be liable for injuries resulting from the breakage of a plate glass door if it is proven the defendant breached a duty of care to exercise ordinary care to maintain a common area of an apartment complex. *Glynos*, 249 Kan. at 485.

### Does K.S.A. 75-6104(m) bar plaintiffs' claims despite any breach of duty?

U.S.D. No. 367 argues the grant of governmental immunity found in K.S.A. 75-6104(m) acts as a total bar to plaintiffs' claims even if torts independent of the immunity statute are pled and proven.

K.S.A. 75-6104(m) states:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(m) the plan or design for the construction of or an improvement to public property, either in its original construction or any improvement thereto, if the plan or design is approved in advance of the construction or improvement by the governing body of the governmental entity or some other body or employee exercising discretionary authority to give such approval and if the plan or design was prepared in conformity with the generally recognized and prevailing standards in existence at the time such plan or design was prepared."

Plaintiffs alleged in their petitions multiple duties and breaches of those duties and causes of their injuries. The causes alleged by plaintiffs can be summarized as failure to warn, failure to provide a safe learning environment, failure to inspect for dangers, failure to properly supervise the students, and failure to replace the plate glass in the doors with safety glass. The jury was instructed on all of these causes except the failure to replace the plate glass with safety glass, presumably based on the trial court's oral ruling preceding the first trial that K.S.A. 75-6104(m) barred it as a basis of liability.

The failure to replace the plate glass with safety glass, however, was a "but-for" and proximate cause of the injuries sustained by the students. Thus, taking into consideration the jury's verdict, there were multiple causes of the students' injuries, one of which, the failure to replace the plate glass with safety glass, we have presumed is barred by K.S.A. 75-6104(m) as a basis for liability. The question becomes whether a governmental entity may be liable for damages caused in part by a breach of duty from which the governmental entity is immune from tort liability pursuant to K.S.A. 75-6104(m) and in part by breaches of duties not so barred.

We begin by noting our standards of review. This issue requires us to construe the KTCA, an issue of statutory construction over which we have unlimited review. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

"[T]he Kansas Tort Claims Act takes an open-ended approach to governmental liability. In other words, liability is the rule while immunity the exception. This approach is consistent with the general principle of law that for negligent or tortious conduct, liability is the rule, immunity the exception. Durflinger v. Artiles, 234 Kan. 484, 501, 673 P.2d 86 (1983); *Noel v. Menninger Foundation*, 175 Kan. 751, 762, 267 P.2d 934 (1954). . . . K.S.A. 1983 Supp. 75-6104 contains the

immunity exceptions to the general rule of governmental liability. In *Broadhurst Foundation v. New Hope Baptist Society*, 194 Kan. 40, 397 P.2d 360 (1964), this court observed ordinarily a strict or narrow interpretation must be applied to statutory exceptions. 194 Kan. at 44. In construing a statute, any doubt should be resolved against the exception, and anyone claiming to be relieved from the statute's operation must establish it comes within the exception. In other words, the burden is not upon the claimants herein to establish the defendants do not come within one or more of the K.S.A. 1983 Supp. 75-6104 exceptions. Rather, the burden is upon the defendant governmental entity, or defendant employee, to establish governmental immunity under one or more of the exceptions of K.S.A. 1983 Supp. 75-6104. If the party claiming this exception cannot meet this burden, the general rule of liability, in K.S.A. 1983 Supp. 75-6103, governs." *Jackson v. City of Kansas City*, 235 Kan. 278, 286, 680 P.2d 877 (1984).

The fundamental rule of statutory construction, to which all other rules are subordinate, is that the intent of the legislature governs when we can ascertain that intent. *In re Marriage of Killman*, 264 Kan. 33, 42, 955 P.2d 1228 (1998). "Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." *State v. Engles*, 270 Kan. 530, Syl. ¶ 3, 17 P.3d 355 (2001). The maxim *expressio unius est exclusio alterius, i.e.*, the inclusion of one thing implies the exclusion of another, may be applied to assist in determining actual legislative intent which is not otherwise manifest, although the maxim should not be employed to override or defeat a clearly contrary legislative intention. *State v. Luginbill*, 223 Kan. 15, 20, 574 P.2d 140 (1977). Under this rule, when legislative intent is in question, we can presume that when the legislature expressly includes specific terms, it intends to exclude any items not expressly included in the specific list. See *State v. Wood*, 231 Kan. 699, 701, 647 P.2d 1327 (1982).

With these standards firmly in mind, we turn to the question posed. Is a governmental entity liable for damages caused in part by a breach of duty from which the governmental entity is immune from tort liability pursuant to K.S.A. 75-6104(m) and, in part, by breaches of duties not so barred?

This question has not been resolved with respect to K.S.A. 75-6104(m), but has been with respect to two other subsections of K.S.A. 75-6104.

In *Jackson v. U.S.D. 259*, 268 Kan. 319, 995 P.2d 844 (2000), plaintiff was injured in a school gymnasium. The district court granted defendant summary judgment, ruling the "recreational use" exception to governmental entity liability, K.S.A. 75-6104(o), barred plaintiff's claim. That statute states a governmental entity or its employees acting within the scope of their employment are not liable for damages resulting from "*any claim* for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or employee thereof is guilty of gross and wanton negligence proximately causing such injury." (Emphasis added.) K.S.A. 75-6104(o).

Jackson argued, similarly to the plaintiffs in the instant case, that the immunity provisions of the KTCA do not apply because the defendant had a duty "under the common law to supervise school children in a non-negligent manner." 268 Kan. at 331.

The Kansas Supreme Court rejected this argument, holding:

"The purpose of K.S.A. 75-6104(o) is to provide immunity to a governmental entity when it might normally be liable for damages which are the result of ordinary negligence. This encourages governmental entities to build recreational facilities for the benefit of the public without fear that they will be unable to fund them because of the high cost of litigation. The benefit to the public is enormous. The public benefits from having facilities in which to play such recreational activities as basketball, softball, or football, often at a minimal cost and sometimes at no cost. The public benefits from having a place to meet with others in its community. In the case of an indoor gymnasium, the public benefits from having a place to participate in recreational activities when the weather outside is wet or cold.

"There is no consideration of ordinary negligence in a case in which the defendant asserts that it is immune pursuant to K.S.A. 75-6104(o), and, therefore, no consideration of duty or breach. K.S.A. 75-6104(o) is a complete defense to actions where the plaintiff alleges only ordinary negligence. [Citations omitted.] Qualified immunity, as found in K.S.A. 75-6104(o), means that the defendant is immune, regardless of any common-law duty, absent a showing of gross or wanton negligence." *Jackson*, 268 Kan. at 331.

See also *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 32 P.3d 1156 (2001) (holding the recreational use exception eliminates any liability of the defendants for ordinary negligence); *Lanning v. Anderson*, 22 Kan. App. 2d 474, 921 P.2d 813 (1996) (holding rec-

reational use exception eliminates any liability of the defendants despite argument teachers and school districts owe a duty of ordinary care to properly supervise and provide a safe learning environment).

Thus, when the recreational use exception applies, it acts as a total bar to claims of ordinary negligence. However, the Kansas Supreme Court has interpreted the exception found in K.S.A. 75-6104(c) differently. That subsection provides immunity to governmental agencies when damages result from "enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, regulation, ordinance or resolution." In *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), a Bonner Springs police officer was badly wounded by three escaped inmates from the Kansas State Penitentiary in Lansing. The officer sued, alleging the State breached a duty to protect him from escaped convicts. The State claimed it was exempt from liability by virtue of K.S.A. 1981 Supp. 75-6104(c).

The Court rejected the argument that the exemption applied in that set of circumstances, reasoning:

"True, the statutes not only authorize the State, through the secretary of corrections, to assume and maintain custody of inmates in the State's penal institutions, including the Kansas State Penitentiary at Lansing, Kansas, but they also impose a duty upon the secretary to retain custody. But state agencies all are created by law; their powers and their duties are established by law; and, in one sense or another, they carry out or enforce the law when they proceed with their day-to-day operations. If 75-6104(c) is given the broadest possible construction, then it becomes almost impossible to conceive of an action by a governmental agency which does not constitute enforcing or carrying out a law.

"We construe K.S.A. 1981 Supp. 75-6104(c) to provide an exemption from claimed liability only where claimant's *sole asserted claim of causal negligence* is the public entity's enforcement or failure to enforce a law. *That section does not provide an exemption where the agency, in enforcing or failing to enforce a law, commits some additional tortious act or omission which would be negligence at common law, and which act or omission causes damage.*" (Emphasis added.) Cansler, 234 Kan. at 568.

See also *Cessna Aircraft Co. v. Metropolitan Topeka Airport Authority*, 23 Kan. App. 2d 1038, 940 P.2d 84, *rev. denied* 262 Kan.

959 (1997) (claim not barred by K.S.A. 75-6104[c] because plaintiffs alleged torts independent of that subsection).

Thus, in contrast to the recreational use exception, the enforcement or failure to enforce a law exception does not act as a total bar to a claim of damages. Rather, when the plaintiff alleges and proves torts independent of the exception, the KTCA does not provide an exemption.

· As noted above, whether the exception to liability at issue in this case, K.S.A. 75-6104(m), acts as a total bar to plaintiffs' claims of damages has not been resolved in Kansas. However, the California courts interpreting that state's enactment of the same law concluded the exception is limited to "design-caused" accidents and "does not immunize [the governmental entity] from liability caused by negligence independent of design, even though the independent negligence is only a concurring, proximate cause of the accident." *Flournoy v. California*, 275 Cal. App. 2d 806, 811, 80 Cal. Rptr. 485 (1969); see also *Bay Area Rapid Transit Dist. v. Superior Court*, 46 Cal. App. 4th 476, 482, 53 Cal. Rptr. 2d 906 (1996) (holding plaintiff's inability to bring forth evidence of a cause of injury independent of the design or plan of the train precluded claim).

Applying the standards of statutory construction noted above, we find the reasoning of the California courts to be persuasive. The recreational use exception exempts governmental entities or their employees acting within the scope of their duties from liability resulting from *"any claim for injuries* resulting from the *use* of any public property." (Emphasis added.) K.S.A. 75-6104(o). On the other hand, the design exception at issue here does not exempt governmental entities from "any claims" resulting from the "use" of a building designed or planned with prior approval from the governmental agency with authority to approve the plan or design and such plan or design met prevailing standards at the time of the design. Thus, the design or plan exception is more like the enforcement or failure to enforce a law exception, K.S.A. 75-6104(c), which similarly does not include the words "any claim."

The legislature could have, but chose not to, grant governmental immunity to "any claim" arising from the design or plan of a build-

ing as it did the use of recreational areas. We do not believe the legislature intended to preclude claims for injuries caused in part by the plan or design of a building and in part by other independent tortious acts.

The defendant's position to the contrary could lead to incredulous results and would be against the public policy of the State as expressed in the KTCA that liability is the rule and immunity the exception. Take for example a school built to code and approved by the State architect in 1890 but still in use today whose front concrete steps are crumbling. The school takes no action to warn of the danger or to replace the steps. A student slips and falls and is severely injured.

Anticipating such a hypothetical, U.S.D. No. 367 argues in its brief

"any claim that old buildings that were adequate when built must be upgraded is barred by this immunity.

"It would be absurd and illogical to suggest that the immunity does not apply unless the premises are constantly upgraded, when the obvious purpose of the provision is to relieve the government of any liability for failing to improve outdated premises."

No authority is cited for "obvious purpose" of the design immunity.

We do not believe the legislature intended governmental entities to be perpetually immune from design or planning flaws or to be immune from liability when the design or plan is but one cause of injury. We note the California and New York courts have rejected the proposition that design immunity continues in perpetuity. See *Baldwin v. California*, 6 Cal. 3d 424, 434, 99 Cal. Rptr. 145, 491 P.2d 1121 (1972) (an initial design immunity exists but liability is permitted when later experience has demonstrated the dangerous nature of the public improvement); *Weiss v. Fote*, 7 N.Y.2d 579, 589, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960) (same).

As recently noted by the California Supreme Court in *Cornette v. Department of Transportation*, 26 Cal. 4th 63, 109 Cal. Rptr. 2d 1, 26 P.3d 332 (2001), the rationale behind the design immunity "is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or

approved the plan or design." 26 Cal. 4th at 69. However, when later experience

" 'has revealed the dangerous nature of the public improvement under changed physical conditions, the trier of fact will not simply be reweighing the same technical data and policy criteria which went into the original plan or design. Rather, there will then be objective evidence arising out of the actual operation of the plan—matters which, of necessity, could not have been contemplated by the government agency or employee who approved the design. No threat of undue interference with discretionary decision-making exists in this situation.' " 26 Cal. 4th at 73 (quoting *Baldwin v. State*, 6 Cal. 3d 424, 435, 99 Cal. Rptr. 145, 491 P.2d 1121 [1972]).

The legislature could have chosen to bar any claim resulting from the design or plan of a governmental building. We conclude the holdings of *Jackson* and *Lanning*, cases based on the recreational use exception, are inapposite to the facts of this case. Based on our statutory construction above and the persuasiveness of the California cases, we hold a governmental entity is not immune from liability caused by negligence independent of design, where that independent negligence is a concurring, proximate cause of the injury. This holding is consistent with the purposes of the KTCA and the exception found in K.S.A. 75-6104(m).

The trial court did not err in overruling defendant's motion for judgment as a matter of law or new trial on this ground.

### *Did U.S.D. No. 367 breach a duty of care independent of the plan or design of the building?*

U.S.D. No. 367 argues the plaintiffs did not submit a legally sufficient claim independent of K.S.A. 75-6104(m).

It is somewhat difficult to deduce from U.S.D. No. 367's brief which ruling of the trial court it is appealing. In this section of its brief, U.S.D. No. 367 simply states our standard of review is the same as for its argument that K.S.A. 75-6104(m) bars all of plaintiffs' causes of action discussed above. The standards of review discussed in the referred-to section of defendant's brief is a shotgun approach and includes the existence of a legal duty, review of a denial of summary judgment, review of a denial of a motion for directed verdict, new trial, erroneous jury instructions, and im-

proper admission of evidence. U.S.D. No. 367 does not argue any evidence was improperly admitted or direct our attention to any jury instructions. This issue was not raised in defendant's motion for summary judgment nor in its renewed motion for summary judgment. The issue was raised in its post-trial motion for judgment as a matter of law or, in the alternative, a new trial.

U.S.D. No. 367's argument heading in this section of its brief reads: "Plaintiffs did not submit a legally sufficient case on *any* claim that was not barred by the statute of repose or by governmental immunity." (Emphasis added.) While this heading seems to imply a sufficiency of the evidence argument, the brief argues: (1) The school district did not owe a duty of care not barred by K.S.A. 75-6104(m), and (2) plaintiff Dunn's notice of claim pursuant to K.S.A. 12-105b was insufficient and bars all claims. We take each in turn.

We must decide what duty a public secondary school and its school district owes an 18-year-old student and a 17½-year-old student. Existence of a duty is a question of law over which we have unlimited review. *Barnett-Holdgraf v. Mutual Life Ins. Co. of New York*, 27 Kan. App. 2d 267, 269, 3 P.3d 89 (2000).

In *Greider v. Shawnee Mission Unified School D. 512*, 710 F. Supp. 296 (D. Kan. 1989), a behaviorally disturbed 8th grade student injured his hand using a table saw. In discussing the duty the school district owed the student, the federal district court stated:

"The Kansas Supreme Court has never addressed the question of whether public schools and teachers owe a duty to properly supervise students and to take reasonable steps to protect students' safety. However, it is likely that the court would recognize such a duty if the question were presented to it. This is apparent from dicta in at least two cases. See *Paulsen v. Unified School District No. 368*, 239 Kan. 180, 717 P.2d 1051 (1986) (court assumed that a duty to properly supervise and provide a safe environment to students existed, but affirmed the trial court's dismissal on the grounds that no breach of the duty had been shown); *Sly v. Board of Education*, 213 Kan. 415, 516 P.2d 895 (1973) (court assumed that the duty to exercise due care for students existed and affirmed the trial court's finding that no evidence of breach of the duty existed). The duty is generally recognized in those jurisdictions which have addressed the question. See Annotation, *Tort Liability of Public Schools and Institutions of Higher Learning for Injuries Resulting From Lack or Insufficiency of Supervision*, 38 A.L.R.3d 830 (1971)." 710 F. Supp. at 299.

In *Kimes v. Unified School Dist. No. 480*, 934 F. Supp. 1275 (D. Kan. 1996), plaintiff was a student at the Liberal Area Vocational Technical School. The federal district court held the school district did not owe her the duty discussed in *Greider* because that case and the Kansas Supreme Court cases it relied on involved minors. 734 F. Supp. at 1278. Rather, it found the duty described in *Nero v. Kansas State University*, 253 Kan. 567, 861 P.2d 768 (1993), to be more applicable. 934 F. Supp. at 1278. Thus, the federal district court found that the proper duty owed by the school was "a duty of ordinary or reasonable care to their adult students." 934 F. Supp. at 1278.

Regardless of plaintiffs' ages, we believe the duty owed by a school district to its high school students is as described in *Greider*: "to properly supervise students and to take reasonable steps to protect students' safety." 710 F. Supp. at 299. High school students are still under the custodial control of the school district while on school grounds and are much more restricted in what they can do than a college student. A college student may choose to leave a class early or even miss class altogether with little or no immediate consequence, except on the final grade; the same is not true of high school seniors. High school seniors may not walk out of class early or skip class on their own volition without immediate consequence—for example, detention or a trip to the principal's office. See *Crow v. California*, 222 Cal. App. 3d 192, 208-09, 271 Cal. Rptr. 349 (1990) (Unlike high school students whose attendance is compelled and over whom school officials have direct responsibility while the students are at school, adult college students attend school and participate in school activities voluntarily.).

Quite simply, high schools act *in loco parentis* with respect to its students. As stated by our Supreme Court in a case involving high school sophomores:

"The teacher/administrator-student relationship has been said to fall within the in loco parentis doctrine, although the doctrine is outmoded in the context of the university-student relationship. See *Nero*, 253 Kan. at 580. Children are released by their parents to the control and supervision of school officials for the time the children are involved in school or school activities. See *Gammon v. Edwardsville School District*, 82 Ill. App. 3d 586, 589, 403 N.E.2d 43 (1980) ('In meeting that

responsibility [for maintaining a discipline among pupils] teachers and school officials stand in the same position as do parents and guardians.').*" *Beshears v. U.S.D. No. 305*, 261 Kan. 555, 560, 930 P.2d 1376 (1997).

See generally *Furek v. University of Delaware*, 594 A.2d 506, 517 (Del. 1991) ("To the extent that the doctrine of *in loco parentis* is still viable, its application is limited to claims against high school authorities for injuries to students arising out of a failure to supervise."); *Dailey v. Los Angeles Unified Sch. Dist.*, 2 Cal. 3d 741, 747, 87 Cal. Rptr. 376, 470 P.2d 360 (1970) ("California law has long imposed on school authorities a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection.' ").

We recognize, however, "proper supervision" of a high school senior of normal intelligence is different than "proper supervision" of a behaviorally disturbed 8th grade student such as in *Greider*. Whether a school district properly supervised a student is a question of fact to be decided by the jury and reviewed only for the sufficiency of the evidence. See *Ferrill v. Board of Education, Cent. Sch. Dist. No. 1*, 174 N.Y.S.2d 91, 93 (1958).

Defendant only argues it owed no duty of care to properly supervise the plaintiffs and to take reasonable steps to protect students' safety, an argument we reject. There is no argument the evidence was insufficient as to a breach of that duty or that a breach caused plaintiffs' injuries. The trial court properly submitted this independent tort to the jury.

### *Was Dunn's K.S.A. 12-105b notice sufficient?*

U.S.D. No. 367 argues Dunn's notice of claim pursuant to K.S.A. 12-105b was insufficient and, thus, bars recovery.

K.S.A. 12-105b requires that any person with a claim against a municipality which could give rise to a claim under the KTCA shall give notice of the claim by filing with the clerk or governing body of the municipality. K.S.A. 12-105b(d). For the purposes of K.S.A. 12-105b, "municipality" includes a school district. K.S.A. 12-105a(a). Such notice must include, among other things, "a concise statement of the factual basis of the claim, including the date, time,

place and circumstances of the act, omission or event complained of." K.S.A. 12-105b(d).

Plaintiff Dunn alleged in his petition that he filed a notice of claim pursuant to K.S.A. 12-105b. In its answer, defendant admitted as much. Further, defendant did not set up in its answer the defense of noncompliance with K.S.A. 12-105b. See K.S.A. 60-212(b) ("Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto."). Defendant never sought to amend its answer. The first time the defendant asserted that Dunn failed to comply with K.S.A. 12-105b was in its supplemental trial brief, and the issue was not listed in the pretrial order. The district court never ruled on the issue. The issue is not properly before this court.

Affirmed.

MARQUARDT, J., dissenting: I respectfully dissent from the majority holding.

Under K.S.A. 75-6104(m),

"[a] governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(m) the plan or design for the construction of or an improvement to public property, either in its original construction or any improvement thereto, if the plan or design is approved in advance of the construction or improvement by the governing body of the governmental entity or some other body or employee exercising discretionary authority to give such approval and if the plan or design was prepared in conformity with the generally recognized and prevailing standards in existence at the time such plan or design was prepared."

The majority correctly stated that we have an unlimited review when considering statutory construction. We recognize that liability is the general rule; however, under K.S.A. 75-6104, immunity is granted in specific instances. It appears that the instant case falls squarely under the exception articulated in K.S.A. 75-6104(m).

The majority concludes that allowing immunity under K.S.A. 75-6104(m) "could lead to incredulous results . . . . Take for example a school built to code and approved by the state architect in 1890 but still in use today whose front concrete steps are crumbling. The school takes no action to warn of the danger or to replace

the steps. A student slips and falls and is severely injured." Such an example is in no way analogous to the facts of the instant case.

According to the school district policy, the school principal, student nurse, and building custodian conduct inspections of the school building once or twice a year to look for potential health and safety hazards. If hazards are found, the school principal orders that the hazard be removed or corrected. The interior door at the high school that had plate glass in it, and a panic bar in the middle was never cited as a safety hazard. Crumbling front concrete steps would be an obvious hazard that would have been noted in such an inspection.

In order for a plaintiff to recover for negligence, notwithstanding the governmental immunity statute, the plaintiff must prove the existence of a duty owed to him or her, a breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. Whether a duty exists is a question of law. Whether the duty was breached is a question of fact. *Honeycutt v. City of Wichita*, 251 Kan. 451, 463, 836 P.2d 1128 (1992).

There is no question that a school has a duty to provide a suitable environment conducive to the general health, safety, and welfare of each student. Even though a school has such a duty, it cannot be an insurer against all accidents. The real question is whether the school breached its duty by having plate glass in the door. At the time of the accident, Dunn was 18 years old and Ballou was 17 years old. They both were seniors and had attended the school for almost 4 years. The accident happened when Ballou and Dunn were moving swiftly down the hall. Ballou extended both of his hands toward the panic bar in the middle of the door and missed it. His right hand broke the glass. Ballou suffered injuries to his face, nose, scalp, and chest. Dunn suffered injuries to his wrist. The panic bar opens the door and acts as a barrier against physical contact with the door.

Dunn and Ballou presented examples of two other incidents where students put their hands through the glass doors located in the gymnasium. In 1985, Dennis Fenoughty put his hand through the gymnasium glass door as he was leaving for a football game. He did not know if the door had plate or safety glass. In the 1982-

83 school year, William John Groth put his hand through a gymnasium glass door while running after his girlfriend. Groth testified that the door had plate glass in it.

Here, the glass door that was broken conformed to the building standards when it was constructed. The door never malfunctioned, and there is no evidence that the glass door had been previously broken.

The majority states: "We do not believe the legislature intended to preclude claims for injuries caused in part by the plan or design or a building and in part by other independent tortious acts." Without specific expression of legislative intent, it is impossible to determine what was intended; however, because the legislature granted immunity under K.S.A. 75-6104(m), it also did not intend to require that all buildings be retrofitted to meet current standards as those standards are updated.

U.S.D. No. 367 did not owe a duty to Dunn and Ballou to replace all of the glass in the doors of the building with safety glass.

I would reverse the trial court's ruling.