No. 76,610

BRENT BESHEARS, a Minor, By and Through his Next Friend and Natural Guardian, BABETTE REIMAN, and BABETTE REIMAN, Individually, *Appellants*, v. UNIFIED SCHOOL DISTRICT NO. 305, *Appellee*.

930 P.2d 1376

Opinion filed January 24, 1997.

*Brian W. Wood*, of Hampton, Royce, Engleman & Nelson, L.C., of Salina, argued the cause, and *Debra Egli James*, of the same firm, was with him on the briefs for appellants.

*Richard A. Boeckman*, of Keenan & Boeckman Law Firm, P.A., of Great Bend, argued the cause, and *Martin J. Keenan*, of the same firm, was with him on the brief for appellee.

*Cynthia Lutz Kelly*, of Topeka, was on the brief for *amicus curiae* Kansas Association of School Boards.

The opinion of the court was delivered by

SIX, J.: This is an after school hours, off school premises personal injury case arising from a prearranged fight between two high school sophomores. Brent Beshears, a minor, by and through his next friend and mother as natural guardian, Babette Reiman, and Babette Reiman, individually, (Beshears) appeal the district court's order granting summary judgment against them and in favor of Unified School District No. 305 ( USD 305). Beshears claims negligence of school officials caused his paralyzing neck injury result-

ing from a fight with a Salina South High School classmate, Michael Jester. The district court ruled that USD 305 owed no duty to Beshears. We affirm based on lack of foreseeability. Our jurisdiction is under K.S.A. 20-3018(c) (a transfer on our motion).

## FACTS

The district court adopted findings of fact from the statements of uncontroverted facts submitted by both parties. Findings Nos. 4 and 6 describe the fight location:

"4. Jester was tired of being harassed by [Devin] Dubuc [another classmate] and Beshears. Jester and Dubuc had a mutual friend, Andy Martin. On the day of the fight, Jester told Martin to tell Dubuc 'that whatever Brent wants to do is fine' and arrangements were made that as soon as Beshears got out of track practice they would meet at Dubuc's house for a fight. On April 30 after school and after track practice, Jester, Kyle Harbaugh, Matt Heine, Kelly Pugh, and Andy Martin [all students at Salina South] went to Dubuc's home in Salina. It was approximately 5:30 p.m. Dubuc called Beshears and told Beshears that Jester did not want to fight at Dubuc's house. Arrangements had not been made for a precise fight location, but rather [Jester] wanted to find a secluded spot where Beshears' friends couldn't jump him. They ended up driving to Fairchild Road in rural Saline County. Fairchild Road is a county road."

Tragically, Beshears suffered a cervical spine injury in the fight, rendering him a quadriplegic. Beshears initially sued Jester and Jester's parents. After discovery of Jester's extensive school disciplinary record and statements Jester claimed to have made to school officials before the fight, Beshears joined USD 305 as an additional defendant, alleging negligent supervision. USD 305 filed a motion for judgment on the pleadings, which was treated as a summary judgment motion. K.S.A. 60-212(b)(6), K.S.A. 60-256. Jester's parents also filed a motion for summary judgment. The district court granted USD 305's motion and denied Jester's parents' motion, entering an order authorizing an interlocutory appeal of the judgment dismissing USD 305.

The district court's findings described Jester's conversations with school officials as follows:

"22. Jester testified that he wanted to make Mrs. Mammen, a counselor, aware that Beshears and Dubuc had a problem with him, that they had harassed him, and spit in his face.

"23. Jester testified that he had told Mrs. Mammen [this] information . . . two days before the fight and then Mammen took him to Mr. Troutfetter, Assistant Principal at Salina South High School.

"24. Jester testified that he told Mammen that Dubuc and Beshears were yelling at him, spit in his face, that it has been going on a couple of days, that Dubuc had a problem with him and now he had Beshears involved, which didn't make any sense to him; he had no problem with Beshears at all prior to that and he told her that if a situation did occur at school, and something happens, that he, Jester, was not going to be involved. Jester testified that he said that if they want to jump on me at school, I am just going to sit there, so that if something does happen in school, I want you to know that it wasn't my fault, so that I won't get expelled from school.

"25. Jester testified that he told Mr. Troutfetter that nothing serious had happened and that he didn't think anything was going to happen, and that he didn't want Troutfetter to act without any real reason.

"26. Jester testified that Troutfetter told him he would like to get everyone up there, and make sure nothing happened. Jester further testified he told Troutfetter he didn't want to go that way unless he had to; he would contact Beshears by himself and try to get it straightened out.

"27. Jester testified that he never went back and talked to Troutfetter and never went back and talked to Mammen.

"28. Jester never told Mammen or Troutfetter that he was going to fight Beshears on April 30, 1993."

The district court's findings described Jester's disciplinary record as follows:

"34. Troutfetter testified that records from Salina South High School indicate Jester had various problems in school. Troutfetter's review of Jester's file revealed the following type infractions:

"A. He and several of his friends would bend metal forks in the cafeteria and leave them on the tray.

"B. Sleeping during lab activity, not on task as per behavior contract.

"C. Not on task, had to borrow a pencil, didn't face front and be quiet after repeatedly asked as per behavior contract.

"D. In-school suspension on December 1 due to excessive office referrals.

"E. In science class, being out of his seat, not working.

"F. Health, conflict with a teacher, teacher sent him to the office.

"G. In class he says he doesn't want to be there, called teacher by nickname, blurted out answer not relevant to the task, gets off task, jokes around in class.

"H. Not in seat during roll call.

"I. Throwing spit balls.

"J. Very little work done in the absence of a teacher while a substitute was covering the class.

"K. Didn't take today's quiz, disruptive behavior during class, pushed a TV cart, refuses to cooperate, talks during quiz, talks during lesson, brings juice to class, has not turned in an essay, no work, continues to break behavior contract. ·

"L. Freshman records indicate that he told the teacher, 'Up yours you stupid broad.'

"M. Detention hall, with little effort to make it up.

"N. Would not remain seated on the bus, jumping over seats, very loud, will not listen to instructions, foul language.

"O. On the school bus, will not listen, always talks back, very rude.

"35. These incidents resulted in Mr. Jester having what is called a 'second hearing.' After a first hearing, a student is set up on probation. If the student is unsuccessful, then there is a second hearing and the purpose is potentially to exclude the student long-term from school.

"36. As a result of the second hearing, the hearing committee decided Jester should be suspended long-term for the remainder of the semester, but the suspension would be waived on a daily basis. Three conditions were set up. No more office referrals; making satisfactory academic progress; and that he would not be allowed to leave the classroom except in medical emergencies. The date of the second hearing was March 29, 1993.

"37. Troutfetter had a conference on April 13, 1993, with Jester. Jester was having a problem with a student teacher which would have invoked a condition of the second hearing which was long-term suspension. However, Jester was persuasive in asking for a second chance; Troutfetter visited with all of Jester's teachers asking whether they were seeing improvement and received a positive response. Troutfetter then decided that the incident was not significant enough to invoke the suspension and that Jester would be allowed to remain in school and attempt to complete the year successfully.

"38. The school records reflect one incident in the first semester of the 1993 school year in which Jester got into a shoving match with a student named Mike McGee. Investigation determined this was not a fight; it was not a situation in which students throw blows or there is a potential for injury."

School officials had the following policies concerning conflicts between students:

"42. Mammen testified that, if a student did come into the office and report that another student was threatening them with some type [of] physical violence, the procedure she would follow would be to take down notes as the student is describing the situation, ask for information about who was involved, and then talk to Mr. Troutfetter, either with the student or she would consult with Troutfetter privately, depending upon the situation and who was involved and the se-

riousness of it. She and Troutfetter would make plans then to get the students together to try to mediate and involving the parents.

. . . .

"44. Troutfetter likewise testified that, if a student reported that they [sic] were concerned that something was going to happen to them [sic], the procedure he would follow is to immediately visit with the student, get the other student involved up in the office, have the two students visit about the situation, have them talk about it when they are hot rather than letting it cool off."

## DISCUSSION

Beshears' injuries occurred after school hours and off school premises. The agreed location for the fight was a secluded spot in rural Saline County. Did USD 305 owe Beshears a duty of care to protect him from the actions of his classmate, Jester? Under the facts of this case, the answer is, "No."

Summary judgment is proper where the only questions presented are questions of law. *McGee v. Chalfant*, 248 Kan. 434, 437, 806 P.2d 980 (1991). Whether a duty exists is a question of law. *Gooch v. Bethel A.M.E. Church*, 246 Kan. 663, 668, 792 P.2d 993 (1990). Our review of questions of law is unlimited. *Calwell v. Hassan*, 260 Kan. 769, 778, 925 P.2d 422 (1996).

### District Court Decision

In granting USD 305's motion for summary judgment, the district court made the following conclusions of law:

"Neither the law nor the uncontroverted facts of this case gives rise to creating a duty whereby the defendant school district should be expected to anticipate or prevent the tragic injuries suffered by Brent Beshears."

"Neither the law nor the uncontroverted facts create a duty by reason of the 'special relationship doctrine.'"

In deciding that USD 305 had no duty to anticipate Beshears' injuries, the district court compared the facts to those in *Sly v. Board of Education*, 213 Kan. 415, 516 P.2d 895 (1973):

"Unlike *Sly*, in this case two high school boys carefully organized a fight with each other at a secluded site miles from the school campus in the late afternoon after all school activities had ceased. Obviously, the contestants and their entourage carefully planned the event to avoid detection by any adult in authority. No intervention was possible. Accordingly, this Court must conclude the defendant's

school personnel owed no legal duty to the plaintiffs to prevent this tragic event from occurring."

In rejecting the creation of a duty under the special relationship doctrine, the district court stated:

"Turning to the case at hand, Michael Jester's disciplinary file clearly shows him to be a troubled, disruptive student at South High School. However, there is no evidence from which to conclude Jester had vicious tendencies toward other students in general, and the plaintiff Brent Beshears in particular. There is nothing in the record to suggest that Jester even had a reputation as a 'fighter' among the student body. It appears to the Court that Jester was a 'garden variety' discipline problem who bent utensils in the school cafeteria and failed to respond to authority appropriately."

## Nature of School/Student Relationship

We first consider whether USD 305 owed Beshears a duty of care under the special relationship doctrine. Generally, without a "special relationship" there is no duty to control the conduct of a third person to prevent harm to others. *Calwell*, 260 Kan. 769, Syl. ¶ 1 (no special relationship under Restatement [Second] of Torts § 315 or § 324A [1964] found to impose liability on doctor for failing to warn patient with sleep disorder not to drive before patient's car struck bicyclists after patient fell asleep at wheel).

Beshears, citing *Nero v. Kansas State University*, 253 Kan. 567, 861 P.2d 768 (1993), argues that the special relationship doctrine expressed in Restatement (Second) of Torts § 315 should impose a duty on USD 305. We do not agree.

The teacher/administrator-student relationship has been said to fall within the in loco parentis doctrine, although the doctrine is outmoded in the context of the university-student relationship. See *Nero*, 253 Kan. at 580. Children are released by their parents to the control and supervision of school officials for the time the children are involved in school or school activities. See *Gammon v. Edwardsville School District*, 82 Ill. App. 3d 586, 589, 403 N.E.2d 43 (1980) ("In meeting that responsibility [for maintaining discipline among pupils] teachers and school officials stand in the same position as do parents and guardians."). This case concerns high school sophomores.

The Kansas Association of School Boards (KASB), in its *amicus curiae* brief, suggests Restatement (Second) of Torts § 320 for guidance. Comment a provides in part: "The rule stated in this Section is applicable to . . . teachers or other persons in charge of a public school." Section 320 emphasizes that before any duty to control third-person conduct exists, there must be the ability to control such conduct and prior knowledge of the need and opportunity for exercising the control.

"We have imposed a § 315 duty only in situations involving a dangerous person in a custodial setting." *Calwell*, 260 Kan. at 780. "We have found a duty owing under § 315(a) only in situations in which the party owing the duty did have the ability or right to control the third person causing the harm." 260 Kan. at 783. USD 305 had neither the ability nor the right to control Jester or Beshears under the facts here.

### Kansas School Cases

We have considered the nature of the duty owed by school officials to students in three cases: *Honeycutt v. City of Wichita*, 251 Kan. 451, 836 P.2d 1128 (1992); *Hackler v. U.S.D. No. 500*, 245 Kan. 295, 777 P.2d 839 (1989); and *Sly*, 213 Kan. 415.

In *Honeycutt*, we rejected the notion that the special relationship between a school district and student created a duty to protect the student on the way home after leaving school premises. A student walking home from kindergarten, unaccompanied by an adult, was injured by a train at a railroad crossing a block and one-half from the school. We reasoned that Honeycutt failed either to prove that the school district assumed a duty to him by its conduct or written policies, or that any special relationship created a duty to protect him beyond school property. 251 Kan. at 472. "To hold otherwise would create an intolerable burden for the school." 251 Kan. at 469.

In *Hackler*, 245 Kan. 295, a 9-year-old student was hit by a vehicle as he crossed a busy street after leaving the school bus at the designated stop. Although the school district provided buses that stopped on either side of the road, the student's father selected the bus that stopped across the street from the student's home.

We affirmed the district court's summary judgment for the school district, deciding that the school district had no duty to assign students to buses because that duty rested with the parents. We held that the bus driver owed no duty to direct the child to cross the street in front of the bus or drop the child off on the side of the street nearest the child's home.

*Sly*, 213 Kan. 415, concerned a fight between students waiting outside a junior high school before the doors opened in the morning. Sly was injured by two other students, King and Brown. Students often arrived early, but were not allowed in the building until 7:15 a.m. and were not supervised. In a negligence and nuisance action filed against the school district and school officials, the district court granted summary judgment for the defendants. We affirmed. In discussing causation, we said:

"Deliberate malicious assaults by students should not be required to be anticipated by school personnel in the absence of notice of prior misconduct of that nature or the likelihood thereof. To hold otherwise would virtually cast school authorities in the role of insurers of the safety of all pupils in their charge. *In summation, the facts relied upon by appellant were insufficient to show that appellees reasonably should have foreseen the occurrence causing his injury.* Appellant's injury must be regarded as legally caused by the sudden, unexpected intervention of King and Brown rather than lack of supervision on appellees' part." (Emphasis added.) 213 Kan. at 425-26.

*Sly* controls this case. Under the facts here, USD 305 could not have reasonably foreseen the off-premises, after-hours fight that produced Beshears' serious injuries.

Beshears argues that *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 819 P.2d 587 (1991), supports his position because in *Specialized Transportation* we recognized a school's duty to prevent a bus driver's sexual assault of a 6-year-old girl with Down's syndrome while transporting the child to and from school. Beshears reasons a similar duty to prevent the fight should be imposed here. However, *Specialized Transportation* provides little guidance here. The duty to control the conduct of a school bus driver to prevent the driver from harming students while the driver is performing his duties is distinguishable from the duty to control driving-age high school males from vol-

untarily participating in a fight at an off-school, rural location, after school and without the knowledge of school personnel.

Beshears has not cited, and we have been unable to locate in our independent research, one case in which a school district has been found liable for negligent supervision concerning a fight between students off school premises and separate from any school-related activities.

### Scope of USD 305's Special Relationship Duty

USD 305 readily acknowledges a special relationship and duty to supervise Jester and Beshears during the school day. In fact, as Beshears points out, USD 305 stated in its motion for judgment on the pleadings that it "is liable for students' injuries which were proximately caused by the district's failure to exercise reasonable care under the circumstances." However, USD 305 argues that such a special relationship does not exist off campus, especially with high school students old enough to drive. We agree.

Beshears is not claiming USD 305 owed him a duty after school hours or off school premises. He contends that USD 305 breached its duty to him during school hours by failing to follow its own policies. Beshears points out that USD 305 had a policy of giving an in-school suspension for after-school fights, even if the fight occurred off school premises, if it was based on statements made in school. However, such a policy does not show that USD 305 undertook the duty to protect its students from unknown prearranged off-school fights. USD 305's efforts to regulate off-school fighting by punishing after the fact should not impose an absolute duty to control off-school fighting. Jester's expulsion problems pertained to his disruptive classroom behavior, not from violence or danger to other students. Although Jester claims to have told school officials about his problem with Dubuc and Beshears, he did not tell them about the prearranged fight. What Jester did tell school officials only related to his concern about being expelled, if Dubuc or Beshears should start something with him.

### Foreseeability

An incident not reasonably foreseeable by the exercise of rea-

sonable care and prudence is not sufficient grounds for a negligence action. *Calwell*, 260 Kan. at 777. See also *Cupples v. State*, 18 Kan. App. 2d 864, 861 P.2d 1360 (1993) (Summary judgment was affirmed for the Department of Corrections and prison officials concerning a negligence claim for an eye injury to Cupples, a female inmate, by another inmate, Young. Although Cupples had problems with other inmates, she never had any prior difficulties with Young.).

Beshears' injuries were not foreseeable to USD 305. USD 305's efforts in trying to keep Jester in school, rather than expel him, should not result in liability. Such liability would work against the public benefit of educating all students. We will not require school officials to mediate every potential conflict between students and to protect students from harm after those students have left the control of the school.

Beshears argues that the precise nature of his injury need not be foreseen, citing *Specialized Transportation*, 249 Kan. at 362. However, Beshears' foreseeability problem does not concern the exact nature of his injury. Beshears' problem is that it was not reasonably foreseeable to school officials that he would voluntarily arrange to fight with Jester after track practice at an isolated site away from school.

## Restatement (Second) of Torts § 324A

Beshears, citing *Honeycutt*, asserts that by its conduct and policies USD 305 assumed a duty to exercise reasonable care to protect him from Jester, relying on Restatement (Second) of Torts § 324A. We disagree.

Beshears acknowledges that in *Honeycutt*, we held that the school district had not assumed a § 324A duty to safely return Honeycutt to his parents after the child left the school grounds. We determined that Honeycutt failed to prove the school district assumed a duty to him through its conduct or written policies. The record revealed that the district "did not agree or act affirmatively to protect [Honeycutt] on his way to and from school." Also, Honeycutt failed to prove that "his mother relied upon or accepted

U.S.D. No. 259's alleged assumed duty of protection." 251 Kan. at 468.

Beshears argues that USD 305 assumed a duty to protect him by (1) allowing Jester to remain in school when he was a danger to his classmates; (2) failing to handle the information Jester gave school personnel regarding the brewing problem between Jester, Dubuc, and Beshears; and (3) enacting policies governing student conduct, discipline, and safety and failing to follow these policies.

Jester was a troubled student. However, his prior conduct at school did not show him to be violent or dangerous to other students. The only fighting incident at school involved a shoving match between Jester and another student in the first semester of the 1992-93 school year. Complaints about his behavior at school all originated from school personnel, not from other students who felt threatened or endangered by him.

USD 305's expulsion policies were intended to give the school authority to expel students for certain conduct, but those policies do not mandate suspension or expulsion. School officials retain discretion. USD 305's alleged failures to abide by its own policies regarding expulsion and dealing with student conflicts did not increase the risk of harm to Beshears, who voluntarily participated in the fight with Jester. Beshears did not rely on USD 305 to protect him from the fight with Jester.

None of the circumstances for imposing a duty under § 324A are present. See *Calwell*, 260 Kan. at 785 ("The services rendered must be those 'which [defendant] should recognize as necessary for the protection of a third person.' ") (quoting Restatement [Second] of Torts § 324A).

## Questions of Material Fact

Beshears argues that USD 305's breach of duty during the school day presents liability questions for the jury. We disagree. Assuming Jester should have been expelled, his disciplinary problems did not present a risk of danger to other students.

Had school officials known about the off-campus fight ahead of time, they possibly could have warned parents and the authorities about it. However, none of the participants wanted their parents

or the authorities to know about the fight. School officials had no way to prevent this prearranged fight, no matter how diligent they may have been.

"Whether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact. Only when reasonable persons could arrive at but one conclusion may the court determine the question as a matter of law. [Citation omitted.]" *Specialized Transportation*, 249 Kan. at 362. When there was no evidence of a risk of harm presented, the question of foreseeability of the harm is a matter of law. Here, no duty is owing.

Beshears argues that a material issue of fact exists about whether USD 305's breach was the proximate cause of Beshears' injuries. USD 305 contends that even if it breached its duty to Beshears, an alternative ground for granting summary judgment is the lack of proximate cause between the breach and the injuries, relying on *Sly*.

The facts here show even less connection between school officials' conduct and Beshears' injuries than in *Sly*. Beshears volunteered to fight Jester at a prearranged location. Sly did not want to fight the two boys who injured him at the school entrance, both of whom had reputations for violence and one of whom had a knife taken from him by a teacher a few weeks before the incident.

Lack of causation is available as an alternative ground for granting summary judgment. However, the district court's ruling that no duty existed to protect Beshears from his injuries is correct. We ground our "no duty" conclusion on the lack of foreseeability.

Affirmed.