**Jane DOE, individually and as natural mother and guardian of Barbara Doe, a minor child Plaintiff,**

**v.**

**UNIFIED SCHOOL DISTRICT, School Counselor, and Elementary School Principal, Defendants.**

**No. 02–2100–JWL.**

United States District Court, D. Kansas.

April 3, 2003.

Brian J. Niceswanger, Dana P. Niceswanger, McDowell, Rice, Smith & Gaar, Overland Park, KS, for Jane Doe.

Gerald L. Green, Carol Z. Smith, Gilliland & Hayes, P.A., Hutchinson, KS, Craig Kennedy, Johnson, Kennedy, Dahl & Willis, Wichita, KS for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Jane Doe, individually and as natural mother and guardian of Barbara Doe, brings this diversity action asserting, among other claims, that defendants Unified School District (the "School District"), School Counselor, and Elementary School Principal ("Principal") negligently failed to report information concerning the suspected sexual abuse of Barbara Doe to the proper authorities. Specifically, Ms. Doe alleges that upon receiving information that Barbara Doe's step-father was sexually abusing her, the School District, School Counselor and Principal had a duty, independent of those the Kansas Legislature has imposed under K.S.A. § 38–1522, to report that information to appropriate authorities or to investigate further those allegations. Ms. Doe also alleges that School Counselor had an independent duty, based on her professional position, to report and investigate such allegations.

While Kansas courts have analyzed a school district's duties in other contexts, it has not squarely addressed what duty, if any, a school district, principal or school counselor owes to a student after receiving information (from a third-party) that a parent is sexually abusing the student. Because the answer to this question may be determinative of the cause now pending and the court finds no controlling precedent in decisions of the Kansas Supreme Court or the Kansas Court of Appeals, the court on its own motion pursuant to K.S.A. § 60–3201 *et seq.* hereby certifies the following questions of Kansas Law to the Kansas Supreme Court:

(1) Whether Kansas common law imposes a duty upon a school district and/or its employees, to report to the appropriate authorities allegations that a parent is sexually abusing a child or to investigate further the validity of such allegations when someone other than the student informs the school and/or its employees that the student has been abused?

(2) Whether Kansas common law imposes a duty upon school counselors, based on their professional status, to report to the appropriate authorities allegations that a parent is sexually abusing a child or to investigate further the validity of such allegations when someone other than the student informs the counselor that the student has been abused?

## BACKGROUND

Barbara Doe is a 16–year old minor who began attending the School District's elementary school when she was in second grade. Sometime during her third grade year (1994 or 1995), she alleges that her step-father began to sexually abuse her. The abuse allegedly continued until sometime in 1998 or 1999.

During Barbara Doe's fourth grade year (1995 or 1996), she told three classmates about the abuse. On April 29, 1996 those three classmates wrote a note to the School Counselor indicating that the classmates were concerned about one of their friends. The following day, the three classmates met with the School Counselor

and told her that Barbara Doe informed them that her step-father had raped her. For purposes of summary judgment, defendants have admitted that the school counselor did not report these allegations to the State Department of Social and Rehabilitation Services ("SRS") or to law enforcement authorities. Moreover, the School Counselor did not attempt to contact Barbara Doe to discuss the allegations, speak to her teachers, follow up with her classmates, or inform Barbara's mother of the allegations. The evidence, viewed in the light most favorable to Ms. Doe, however, establishes that the School Counselor told the School Principal about the classmates' allegations. The Principal did not investigate or report the allegations of abuse.

As a result of the ongoing sexual abuse, Barbara Doe allegedly suffers from depersonalization disorder. Jane Doe alleges that the abuse, more likely than not, would have ended in the fourth grade had the school or School Counselor reported the allegations to proper authorities or investigated further the reports made by Barbara Doe's classmates.

## DISCUSSION

By statute, Kansas law provides that when teachers, school administrators or other employees of a school which the child is attending have "reason to suspect that a child has been injured as a result of physical, mental or emotional abuse or neglect or sexual abuse, the person shall report the matter promptly..." to SRS. K.S.A. § 38–1522. The Kansas Supreme Court, however, has held that this statute does not create a private right of action for those aggrieved by a violation of this duty. *Kansas State Bank & Tr. Co. v. Specialized Transp. Serv., Inc.*, 249 Kan. 348, 373, 819 P.2d 587 (1991) (noting that "[i]f the legislature had intended to grant a private right of action in K.S.A. 38–1522 it would have specifically done so"). Significantly,

though, the court did not address whether such a duty existed at common law.

Recognizing that K.S.A. § 38–1522 does not create a private right of action, Ms. Doe has asserted that a similar duty exists under common law, based on the special relationship between the school and its students. Kansas courts have explored a school's duty to protect its students in other contexts. Most recently, the Kansas Court of Appeals held that a school owes students the duty to properly supervise students and to take reasonable steps to protect their safety. *Dunn v. Unified Sch. Dist. No. 367*, 40 P.3d 315, 326 (Kan.Ct. App.2002). The court in *Dunn*, however, addressed an injury that occurred while a student was on school premises and in the district's direct custody and control.

Other decisions have addressed the duty of a school district and its employees when a student is injured off of school property. For example, in *Honeycutt v. City of Wichita*, 251 Kan. 451, 836 P.2d 1128 (1992), the Kansas Supreme Court examined a school's duty to protect a student who was injured when walking home from kindergarten. Therein, the court suggested that a school's duty to protect students ends when they pass beyond the control and custody of the school system. The court, quoting New York caselaw, stated that a "school's duty is...coextensive with and concomitant to its physical custody and control over the child. When that custody ceases because the child has passed out of the orbit of its authority in such a way that the parent is perfectly free to reassume control over the child's protection, the school's custodial duty also ceases." *Id.* at 469, 836 P.2d 1128 (quoting *Pratt v. Robinson*, 39 N.Y.2d 554, 560, 384 N.Y.S.2d 749, 349 N.E.2d 849 (1976)).

Likewise, in *Beshears v. Unified Sch. Dist. No. 305*, 261 Kan. 555, 930 P.2d 1376 (1997), the Kansas Supreme Court refused

to recognize a duty to protect a student from third-person conduct under the Restatement (Second) of Torts § 315, given the specific facts of that case. In *Beshears*, a student, Mr. Jester, was being harassed by other students, including Mr. Beshears. *Id.* at 556, 930 P.2d 1376. The students arranged to fight at a location far away from school premises and long after the school day had ended. *Id.* Tragically, Mr. Beshears suffered a spine injury in the fight, rendering him quadriplegic. *Id.* At trial, Mr. Beshears argued that the school had a duty to protect him from injury because it knew or should have known that the fight was going to occur based on statements Mr. Jester made to the school counselor and Mr. Jester's disciplinary history. The trial court granted defendants' motion for summary judgment, finding no duty existed because the fight was not reasonably foreseeable. *Id.* at 559–60, 930 P.2d 1376.

On appeal, the Kansas Supreme Court recognized that a defendant has a duty to control the conduct of a third person to prevent harm to others only when a special relationship exists between the defendant and one of the other parties. *Id.* at 560, 930 P.2d 1376 (citing Restatement (Second) of Torts, § 315). More importantly, the court noted that "before any duty to control third-person conduct exists, there must be the ability to control such conduct and prior knowledge of the need and opportunity for exercising control." *Id.* at 561, 930 P.2d 1376 (citing Restatement (Second) of Torts, § 320). The court found no duty because Mr. Beshears' injuries were not reasonably foreseeable to the school district. Though Mr. Jester told school officials about his problems with Mr. Beshears, "he did not tell them about the prearranged fight." *Id.* at 563, 930 P.2d 1376. Additionally, Mr. Jester's history of discipline problems related to "disruptive classroom behavior, not from violence or danger to other students." *Id.*

Because the district could not have foreseen that this particular fight was going to occur, the school district lacked the prior knowledge and ability to control the students necessary to impose a duty under the Restatement. The court noted in dicta, however, that:

> [h]ad school officials known about the off-campus fight ahead of time, they possibly could have warned parents and the authorities about it. However, none of the participants wanted their parents or the authorities to know about the fight. School officials had no way to prevent this prearranged fight, no matter how diligent they may have been.

*Id.* at 565–66, 930 P.2d 1376.

As stated earlier, the Kansas Supreme Court has not had an opportunity to address what, if any, duty a school district, principal, and/or a school counselor owe to students under the circumstances presented in this case. Existing Kansas Supreme Court decisions seemingly could permit two differing outcomes: first, that a school district and its employees owe no duty to protect students from third-parties once they leave school grounds and are beyond the direct control and custody of the district, as one could infer from the court's holding in *Honeycutt;* or second, that the school's special relationship with students extends beyond the geographic boundaries of the school when it knows or reasonably should know that a third-party poses a risk to the safety and welfare of that student, as one might infer from the dicta in *Beshears.* Independently, Kansas courts have not addressed what duty a school counselor owes, based on his or her professional status, to a student when someone other than the student informs the counselor that the student has been abused. In the end, the answers to these questions involve substantial public policy choices. Important considerations of federalism counsel

that a state court, rather than a federal court, make those choices.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the foregoing questions of law be certified to the Kansas Supreme Court.

**IT IS FURTHER ORDERED THAT** the Clerk of this Court forward to the Kansas Supreme Court a copy of this order, and comply with any subsequent requests which may be made by the Kansas Supreme Court for the original or copies of all or any portion of the record in this case.